IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SAMUEL H. MWABIRA-SIMERA,

    *Plaintiff*,

    v.

MORGAN STATE UNIVERSITY, *et al.*,

    *Defendants*.

Civil Action No. ELH-10-1497

**MEMORANDUM OPINION**

Samuel H. Mwabira-Simera, the self-represented plaintiff, is a former student at Morgan State University ("Morgan State" or the "University"). He filed this action against the University and seven of its officers and employees, defendants,[1] alleging discrimination on the basis of race, national origin, and disability, as well as a host of related claims.[2]

Several of plaintiffs' claims were dismissed by an Order issued by Judge Blake on September 30, 2010 (ECF 12), granting defendants' "Motion to Partially Dismiss Complaint" (ECF 5). What remains, as best as can be discerned from a liberal reading of the Complaint, are

---

[1] The individual defendants are Earl S. Richardson, the President of the University; Linda F. Farrar, the Special Vice President; T. Joan Robinson, the Provost and Vice President for Academic Affairs; Kara M. Turner, the Assistant Vice President for Academic Affairs; Burney J. Hollis, the Dean of the College of Liberal Arts within the University; Annette Palmer, the Chair of the Department of History & Geography; and Sarah Smiley, a former Instructor in the Department of History & Geography. Plaintiff's Complaint (ECF 2) does not make clear the role, if any, that Dr. Farrar and Dr. Turner played in the events alleged. In any event, by way of an Order issued on September 30, 2010 (ECF 12), Judge Catherine C. Blake dismissed plaintiff's claims against the individual defendants in their individual capacities; they remain as defendants only in their official capacities.

[2] Plaintiff filed suit in the Circuit Court for Baltimore City in May 2010. *See* ECF 2. Defendants removed the suit to federal court in June 2010, on the basis of federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1441. The case was reassigned from Judge Blake to me on January 13, 2011.

claims of (1) discrimination on the basis of race and national origin under Title VI of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.*; and (2) discrimination on the basis of disability

under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.*

Following discovery, defendants filed a "Renewed Motion for Summary Judgment"

("Motion") (ECF 66), supported by exhibits.  The Motion has been fully briefed,[3] and no hearing

is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons set forth below, I will grant the

Motion.

### Factual and Procedural Background

The essence of plaintiff's complaint is that, as a student at Morgan State, he was the

victim of a "racially discriminatory graded course," Complaint ¶ 7 (ECF 2), and that he was

"failed based on disability, race, and filth [sic] place of origin," ECF 74 at 5.  For their part,

defendants maintain that plaintiff was given a failing grade because he committed plagiarism.

As a self-represented litigant, plaintiff is entitled to a liberal construction of his pleadings.  *See,*

*e.g.*, *Erickson v. Pardus*, 551 U .S. 89, 94 (2007).  Moreover, given the posture of the case, the

record is reviewed in the light most favorable to plaintiff.  *See, e.g.*, *Mylan Labs., Inc. v. Matkari*,

7 F.3d 1130, 1134 (4th Cir. 1993).  The relevant facts follow.

Plaintiff is a native of Uganda, Complaint ¶ 2, where he states that he was the victim of

state-sponsored torture.  *See* Deposition of Samuel H. Mwabira-Simera at 15-17 ("Mwabira-

Simera Dep."), Ex. A to Motion (ECF 66-2).  As a result of this torture, plaintiff asserts that he

has a physical disability that affects his walking, mobility, talking, communication, hearing,

---

[3] In response to the Motion, plaintiff filed an Opposition (ECF 74), accompanied by numerous exhibits.  Thereafter, defendants filed a one-page Reply (ECF 75).

sight, and memory. He also claims to suffer from post-traumatic stress disorder. *Id.* Defendants do not dispute that plaintiff has one or more disabilities within the meaning of the ADA and the Rehabilitation Act.

In the spring of 2007, plaintiff enrolled as an undergraduate student at Morgan State in Baltimore, Maryland. Complaint ¶ 7. Plaintiff registered with the University's Student Disability Services office, through which he was provided with note-takers, a tape recorder, and extended time on examinations, in order to accommodate the disabilities that affect his speed of writing. Mwabira-Simera Dep. at 16-19.

In the fall of 2008, Plaintiff enrolled in a course titled "Geography 309: Urban Land Use," taught by Dr. Sarah Smiley. *Id.* at 20. On or about October 18 or 19, 2008, plaintiff took the second scheduled mid-term examination for that course. *Id.* at 42. According to the examination instructions, submitted by defendants as Exhibit B to the Motion (ECF 66-3), Mr. Mwabira-Simera's examination was to be completed within a 100-minute time limit (which was double the time allotted for other students without qualifying disabilities). *See id.*; *see also* Mwabira-Simera Dep. at 38-39. The examination contained one multiple-choice section, a second section requiring the student to define five terms in one or two sentences each, and a third section requiring single-paragraph answers to each of five questions. *See* Ex. B to Motion. Apparently, Mr. Mwabira-Simera's examination was proctored by staff from the University's Student Disability Services office. *See* Mwabira-Simera Dep. at 38-39. The exam instructions expressly stated: "THIS IS A CLOSED BOOK / CLOSED NOTE EXAM! You may <u>not</u> use your book or class notes." Ex. B to Motion (emphasis and capitalization in original).

Shortly after the exam, on October 24th, Dr. Smiley met with plaintiff in her office, and she informed him that she believed he had committed "academic dishonesty" on his mid-term exam and began to question him on the substance of the exam to test his knowledge of the material.  Opposition at 6, 8.  Additionally, in his Opposition, plaintiff claims that, at that meeting, Dr. Smiley "insulted and insinuated [sic]" him with a "racial slur."  Opposition at 6.

On October 27, 2008, Dr. Smiley sent an email to plaintiff, recommending that he meet with her and Dr. Denicia Fowler, of the Student Disability Services office, to discuss the Geography 309 mid-term exam.  *See* ECF 66-4 (email).  At this second meeting, which took place on November 3, plaintiff was again asked "to answer the [mid-term] examination questions in the presence of both Dr. Sarah Smiley and Dr. Fowler so that [he] could prove to them that [he] did the work independently."  ECF 74-5 at 3.  In his Opposition, plaintiff claims that when Dr. Fowler left the room to attend to another student, Dr. Smiley called him "filth jungle [sic]," and said he would "never pass her exam."  Opposition at 6.[4]

On November 5, 2008, plaintiff emailed Dr. Annette Palmer, the Chair of the Department of History and Geography, to file a grievance against Dr. Smiley.  *See* Ex. 4 to Opposition (ECF 74-5) (grievance).  In his grievance, plaintiff contended that Dr. Smiley had "implemented a racist bias against" him and "marked [his] first paper in her racist mindset."  *Id.*  He requested that he be reassigned to another instructor for the remainder of the semester because Dr. Smiley "is possessed with a racial hate towards" him.  *Id.*

The following day, November 6, Dr. Palmer emailed plaintiff and informed him that Dr. Smiley had officially accused him of "plagiarism in [his] mid-term examination and in a written

---

[4] Defendants deny plaintiff's allegations that Dr. Smiley directed epithets at plaintiff on the basis of his race or national origin.  *See* Motion at 9.

- 4 -

assignment for that class." Ex. E to Motion (ECF 66-6) (email).  Dr. Palmer instructed plaintiff "to make an appearance before the Adjudication Committee of the Department of History and Geography to answer these charges." *Id.*

The meeting of the Adjudication Committee took place on or about November 12, 2008. Following the meeting, the Committee decided to assign plaintiff a grade of "F" for the exam. Opposition at 7.  In a letter dated November 13, 2008, Ex. F to Motion (ECF 66-7), Dr. Palmer, as Chair of the Committee, informed plaintiff of the Committee's findings:

> The Adjudication [C]ommittee of the department of History and Geography deliberated after our meeting yesterday and we have concluded that you should receive a grade of "F" for the mid-term examination.  Your examination contains extensive paragraphs filled with specific data and identical words from the text and other published materials as well as the exact conventions from those written works which cannot be explained by coincidence.  Because you failed to attribute the passages in your examinations to their authors and you submitted this material as if it were your own to obtain credit, faculty in this department think that you have violated university rules and should be subject to penalty.

Dr. Palmer's letter also instructed plaintiff that he could appeal the decision to the Dean of the College of Liberal Arts within 10 working days of the departmental decision.  *Id.*

On November 13, 2008, plaintiff filed his appeal with the President of the University, instead of the Dean, because he believed the Dean to be racist.  Mwabira-Simera Dep. at 11, 13. On January 13, 2008, Dr. Burney J. Hollis, the Dean of the College of Liberal Arts, sent a letter to plaintiff, informing plaintiff that he was unable to consider any appeal of the Adjudication Committee's ruling because plaintiff had been informed of his right to appeal to the Dean within 10 days but had failed to do so.  *See* Ex. G to Motion (ECF 66-8) (letter from Dean).

Dr. T. Joan Robinson, the University's Provost and Vice President for Academic Affairs, met with plaintiff on March 3, 2009, concerning the Geography 309 course, and then wrote to

him that she could not consider his appeal because it had not been timely filed with the Dean, and therefore, the "[Adjudication] [C]ommittee's ruling stands." Ex. H to Motion (ECF 66-9) (letter from Provost). By letter dated March 19, 2009, the President of the University also wrote to plaintiff, stating that, because plaintiff had not filed his appeal with the appropriate Dean, the President could not consider his appeal. *See* Ex. I to Motion (ECF 66-10).

This suit followed. The Complaint (ECF 2) is divided into several rambling counts that are interspersed with citation to case law and statutory authorities. As best as can be discerned from a liberal construction of the Complaint, in Count I plaintiff asserts discrimination on the basis of race and national origin under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Count II charges "Unlawful Retaliation," invoking Title VI and Title VII, as well as Title IX of the Education Amendments of 1972, codified at 20 U.S.C. §§ 1681 *et seq.*, and the Equal Education Opportunity Act of 1974, 20 U.S.C. § 1703. In Count III, plaintiff alleges an "abusive, hostile academic and work environment" under Title VI, Title VII, Title IX, and the Administrative Procedure Act ("APA"), codified in various sections of 5 U.S.C. Count IV charges defendants with "stalking," in violation of Maryland criminal law. *See* Md. Code (2012 Repl. Vol.), § 3-802 of the Criminal Law Article ("C.L.") (formerly Article 27, § 124). Count V asserts violations of plaintiff's rights under Title II of the ADA and, apparently, § 504 of the Rehabilitation Act.[5] Another count, also denominated "Count V," charges "Abuse of Process," and refers to the federal criminal prohibitions of perjury and conspiracy. Count VI appears to assert additional violations of Title VI, Title VII, Title IX, and the APA, under the

_____

[5] Plaintiff refers to his "rights to be free from discrimination based on his disability under Title VII section 504," Complaint ¶ 41, but Title VII does not govern disability discrimination or contain a "section 504."

rubric of "Intentional delays and Intentional negligence."   Another count, also denominated "Count VI," charges defendants with violation of the federal criminal prohibition of interference with federally protected activities.  *See* 18 U.S.C. § 245.[6]  Count VII does not assert a substantive cause of action.  Rather, it argues for tolling of the applicable statutes of limitations.[7]  Finally, Count VIII asserts violations of the federal criminal prohibitions of conspiracy to deprive a person of federal rights, *see* 18 U.S.C. § 241, and deprivation of federal rights under color of law.  *See* 18 U.S.C. § 232.

After defendants removed the case to federal court, they filed a "Motion to Partially Dismiss Complaint" (ECF 5).  Defendants advanced the following arguments: (1) plaintiff's claims under Title VII could not succeed, because Title VII only addresses discrimination in employment; (2) Title IX applies to colleges and universities, but only prohibits discrimination on the basis of sex, and thus plaintiff's Title IX claims should be dismissed because he did not allege any facts suggestive of sex discrimination; (3) the APA claims should be dismissed because the University is a state public institution of higher learning, not a federal agency, and so the federal APA does not apply to it; (4) the abuse of process claim should be dismissed because the tort of abuse of process only applies to misuse of the court system, not internal university disciplinary proceedings, and plaintiff did not allege that defendants had brought legal proceedings against him; (5) plaintiff's claims of violations of federal criminal law must be dismissed because violations of those statutes can only be prosecuted by the federal government, and they do not create any private right of civil action for individual plaintiffs; (6) plaintiff's

---

[6] In the text of this second "Count VI," plaintiff also refers to the District of Columbia Civil Rights Act of 1977, as well as Title VII, Title IX, and the APA.

[7] Defendants have not asserted that any of plaintiff's claims are time-barred, so I need not consider issues concerning limitations.

claims against the individual defendants in their individual capacities must be dismissed because none of the statutes on which plaintiff brought suit create liability for natural persons in their individual capacity; and (7) plaintiff's claims of violation of Maryland criminal law also must be dismissed because the Maryland criminal statutes contain no private right of civil action.

By an Order issued on September 20, 2010, Judge Blake granted the Motion to Partially Dismiss Complaint.  As noted, following Judge Blake's Order, it appears that plaintiff's claims of discrimination on the basis of national origin and race under Title VI remained viable, as well as his claims of disability discrimination under Title II of the ADA and § 504 of the Rehabilitation Act.[8]

In October 2010, plaintiff noted an interlocutory appeal of Judge Blake's Order to the Fourth Circuit (ECF 13).  On February 22, 2011, the Fourth Circuit dismissed plaintiff's appeal (ECF 18 & 19).  A period of discovery then ensued.  Discovery was initially scheduled to conclude by August 8, 2011, *see* ECF 23, but I granted two extensions of the discovery deadline: one until September 8, 2011, *see* ECF 31, and the other until October 24, 2011.  *See* ECF 35.  On

---

[8]  The Motion to Partially Dismiss Complaint did not address plaintiff's claim of violations of the Equal Education Opportunity Act of 1974.  However, this claim is not viable because the act only applies to elementary and secondary schools, not colleges and universities, such as Morgan State.  *See* 20 U.S.C. § 1720.

The Motion to Partially Dismiss Complaint also did not address the Complaint's fleeting reference to the District of Columbia Human Rights Act of 1977.  That statute, codified in Title 2, Chapter 14 of the D.C. Code, is the District of Columbia's local civil rights law.  It prohibits discrimination, in a variety of contexts, on several bases, including race, national origin, and disability.  It is not clear how this statute applies to alleged unlawful activity that occurred in Maryland, under the auspices of a Maryland institution of higher learning.  To the extent that the Complaint's reference to D.C.'s local civil rights provisions could, under an extraordinarily liberal reading, be construed as a reference to analogous Maryland and Baltimore City state and local law prohibiting discrimination on those bases, there is no indication that plaintiff's claims under such state and local law should be subject to any different analysis than his discrimination claims based on federal law, discussed *infra*.

November 7, 2011, defendants filed a Motion for Summary Judgment (ECF 41).   Because plaintiff complained that he had been unable to coordinate with defendants' counsel to schedule depositions during the extended discovery period, *see* ECF 43 & 49, I denied the defense motion, without prejudice to renewal.   *See* ECF 52.   The Court permitted a further period of discovery, *see id.*, which was also extended several times to accommodate plaintiff.   *See* ECF 61, 69.   Upon the conclusion of discovery, defendants filed the instant Motion.

Additional facts will be included in the Discussion.

## Discussion

### A.  Standard of Review

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   A fact is "material" if it "might affect the outcome of the suit under the governing law."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In resolving a motion for summary judgment, a district court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party.   *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *News and Observer Publishing Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'" showing that there is a triable issue.   *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th

Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  The district court's "function" in resolving a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.  If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment.  *Id.* at 248.

## B.  Race / National Origin Discrimination

Plaintiff alleges that he was subjected to intentional discrimination in violation of Title VI of the Civil Right Act of 1964.  Title VI provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 42 U.S.C. § 2000d, including in any federally funded "college, university, or other post-secondary institution, or a public system of higher education."  *Id.* § 2000d-4a(2)(A). The University does not dispute that it is subject to Title VI.

On a claim of discrimination under Title VI, the plaintiff may proceed along either of two avenues of proof in order to survive a motion for summary judgment.  First, the plaintiff may present direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the allegedly discriminatory conduct.  *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).  Alternatively, the plaintiff may proceed under the well known *McDonnell Douglas* burden-shifting framework.  This proof scheme requires a plaintiff first to adduce evidence sufficient to establish a prima facie case of discrimination, and then to present evidence from which a fact finder could

conclude that any legitimate basis proffered by the defendant for its adverse action is actually a pretext for discrimination.   *Id.*   Although initially developed in the context of claims of employment discrimination under Title VII, the *McDonnell Douglas* burden shifting framework also applies to Title VI claims.   *See Middlebrooks v. Univ. of Maryland*, 166 F.3d 1209 (4th Cir. 1999) (unpublished table opinion) (Title VI "claims are appropriately analyzed under the Title VII proof scheme, first articulated in *McDonnell Douglas Corp. v. Green*"); *Peters v. Jenney*, 327 F.3d 307, 321 n.15 (4th Cir. 2003) (analyzing Title VI retaliation claim under *McDonnell Douglas*); *Jane v. Bowman Gray Sch. of Med.-N. Carolina Baptist Hosp.*, 211 F. Supp. 2d 678, 690 (M.D.N.C. 2002); *Escobar v. Montgomery County Bd. of Ed.,* No. AW-99-1964, 2001 WL 98600, *5 (D. Md. Feb. 1, 2001) ("Courts commonly use the Title VII discrimination proof scheme to evaluate claims for intentional discrimination under Title VI."). *See also New York Urban League, Inc. v. State of New York*, 71 F.3d 1031, 1036 (2d Cir. 1995); *City of Chicago v. Lindley*, 66 F.3d 819, 830 (7th Cir. 1985).  I will address these avenues in turn.

In his Complaint and in his Opposition, plaintiff has made factual claims regarding racial slurs used by Dr. Smiley.  For example, in his Opposition plaintiff claims that Dr. Smiley "insulted and insinuated [sic]" him with a "racial slur," and called him "filth jungle [sic]." Neither the Complaint nor the Opposition was executed under oath, however.

To be considered at summary judgment, factual assertions must be capable of presentation in a form that is admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2); *see also Toll Bros., Inc. v. Dryvit Sys., Inc.*, 432 F.3d 564, 568 (4th Cir. 2005) ("Summary judgment is warranted when the *admissible* evidence forecasted by the parties demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of

law."); *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993); *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 59 (4th Cir. 1991); *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999) ("To be entitled to consideration on summary judgment, the facts set forth by the parties in affidavits or otherwise must be such as would be admissible in evidence."), *aff'd*, 213 F.3d 632 (4th Cir. 2000).

Rule 56(c)(1) provides:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Moreover, "when affidavits are used to support or oppose a summary judgment motion, they 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' These requirements are mandatory." *In re French*, 499 F.3d 345, 358 (4th Cir. 2007) (quoting former Fed. R. Civ. P. 56(e), now codified without substantive change in Fed. R. Civ. P. 56(c)(4)).

Plaintiff's assertions in his Complaint and in his Opposition are not admissible, because he has not complied with Fed. R. Civ. P. 56(c). "Although *pro se* litigants are given liberal treatment by courts, even *pro se* litigants are expected to comply with . . . procedural rules 'without which effective judicial administration would be impossible.'" *Dancy v. Univ. of N.C.*

- 12 -

*at Charlotte*, No. 3:08-CV-166-RJC-DCK, 2009 WL 2424039, at *2 (W.D.N.C. Aug. 3, 2009) (quoting *Ballard v. Carlson*, 882 F.2d 93, 94 (4th Cir. 1989)).

Even if, in the exercise of discretion, I were willing and able to overlook a self-represented plaintiff's non-compliance with the formalities of evidentiary presentation as to events the plaintiff claims to have experienced, I will not do so in this instance. This is because plaintiff is no stranger to litigation in federal court, and his litigation history strongly warrants the conclusion that, like other litigants, he is required to support under the penalties of perjury his allegations of racial discrimination.

Within the past few years, Mr. Mwabira-Simera has litigated at least four other suits against various defendants, in this court and in the United States District Court for the District of Columbia, in which he has alleged that the defendants maligned him with slurs on the basis of racial and national origin. Notably, his descriptions of those slurs used surprisingly consistent and idiosyncratic language.[9]

To illustrate, in *Mwabira-Simera v. Howard University*, Civ. No. RWR-05-441 (D.D.C.), Complaint ¶ 14, plaintiff alleged that his instructors at Howard University "made derogatory, insulting, and humiliating ethnic slurs and comments about Plaintiff Mwabira, based on his African, Ugandan, national origin, including, but not limited to, his place of origin Africa, like he is 'from the jungle', his physical characteristics, his 'long African name', his 'funny accent', and his 'smelly African odor,'" and alleged that one of his instructors, Professor Errol Noel, repeatedly called him a "'jungle man.'"

---

[9] It is proper to take judicial notice of court records. *See, e.g.*, *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989).

Similarly, in *Mwabira-Simera v. Sodexho/Marriot Management Services*, Civ. No. RWR-06-2052 (D.D.C.), Complaint ¶ 14, plaintiff alleged that agents of his employer, Sodexho, "made derogatory, insulting, and humiliating ethnic slurs and comments about Plaintiff Mwabira-Simera, based on his African, Ugandan, national origin, including, but not limited to, his physical characteristics, his 'long African name', his 'funny accent', and his 'smelly African odor.'"  He also contended that the defendants subjected him to "derogatory epithets about Plaintiff's national origin, ethnic jokes, slurs, and . . . abuse such as smelling like 'urine', 'mops', 'cats' . . . 'unhygienic', 'gluttony' . . . ."  *Id.* ¶ 10.

In *Mwabira-Simera v. Thompson Hospitality Services, LLP*, Civ. No. WMN-11-2989 (D. Md.), Complaint ¶ 11, plaintiff alleged that his employer subjected him to "derogatory epithets about national origin, ethnic jokes, slurs, and . . . abuse such as smelling like 'sanitary septic tank', 'mops', 'cats', [']thief', 'unhygienic', 'gluttony' . . . ."  Moreover, he claimed that his supervisors "made derogatory, insulting, and humiliating ethnic slurs and comments about Plaintiff, based on his African-Canadian, national origin, including, but not limited to, his physical characteristics, his 'long African name', his 'funny accent', and his 'smelly like sanitation septic tank and African odor.'"  And, plaintiff asserted nearly identical claims, alleging that defendants insulted him using the same very distinctive language in another suit against the same defendants, *Mwabira-Simera v. Thompson Hospitality Services, LLP*, Civ. No. WMN-12-848 (D. Md.).

Suffice it to say, plaintiff's unsworn assertions here are strikingly similar to those he has leveled against other defendants in the past.  Indeed, in paragraph 14 of his Complaint in this case, plaintiff's allegations pertain to another university, Howard University, not Morgan State,

suggesting, at best, an unfortunate but rather unusual coincidence of racial slurs. Plaintiff asserts in this case:

> Agents, servants, and employees of *Howard* made derogatory, insulting, and humliating ethnic slurs and comments about Plaintiff Mwabira-Simera, based on his African, Ugandan, national origin, including, but not limited to, his physical characteristics, his "long African name", his "funny accent", and his "smelly African odor." *Defendant Johnson and Defendant Noel* made such derogatory ethnic comments about Plaintiff Mwabira-Simera while at the school whenever I went to report of *Noel's* insults. (Emphasis added.)

Clearly, these allegations were taken directly from plaintiff's unrelated suit against Howard University, and pertain to persons who were plaintiff's instructors at Howard, not at Morgan State.

In light of this history, the Court will not overlook plaintiff's failure to support his claims with admissible evidence, such as affidavits or deposition testimony, made under oath and subject to the penalties of perjury. Because the record does not contain any admissible direct or circumstantial evidence of discrimination, I turn to the *McDonnell Douglas* framework.

Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the plaintiff can establish a prima facie case, the burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for its actions. If the defendant meets that burden, then the plaintiff must demonstrate that the defendant's proffered reason is merely pretextual and "unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

In this case, the plaintiff alleges that the University's decision to assign him an "F" for the Geography 309 midterm exam was racially motivated. In the context of a claim of unlawful discrimination in grading, to satisfy his burden of making out a prima facie case of

discrimination, plaintiff must present evidence sufficient to demonstrate (1) that he is a member of a protected class; (2) that his work qualified for a passing grade; and (3) that, notwithstanding his qualified work, he was given a failing grade.  *See Middlebrooks*, *supra*, 166 F.3d 1209.

It is undisputed that plaintiff, a black man of Ugandan origin, is a member of a protected class, and that the University gave plaintiff an "F" for the exam.  However, plaintiff fails to make out a prima facie case because he has not demonstrated, nor has he even alleged, that his work qualified for a better grade.  Plaintiff has offered no evidence, by way of expert testimony or otherwise, suggesting that his performance in Geography 309 qualified him for a better grade. *Cf. King v. Rumsfeld*, 328 F.3d 145, 150 (4th Cir. 2003) (suggesting the use of an expert to testify as to an employer's legitimate job expectation).

Furthermore, even assuming that plaintiff has successfully alleged a prima facie case, he has done nothing to rebut the University's stated non-discriminatory motive for his failing grade. The University states that plaintiff was in violation of the school's disciplinary code for plagiarizing parts of his mid-term exam.  Notably, plaintiff has not denied this.  Nor has he presented any evidence to show that this reason was merely a pretext for an otherwise discriminatorily-motivated grade.  Additionally, plaintiff has not demonstrated, nor has he even alleged, that similarly situated students of other races or nations of origin were treated differently for plagiarism.

"Courts will not generally interfere in the operations of colleges and universities." *Herzog v. Loyola College in Maryland, Inc.*, No. 07-02416, 2009 WL 3271246, at *9 (D. Md. Oct. 9, 2009) (citing *Onawola v. Johns Hopkins Univ.*, 412 F. Supp. 2d 529, 532 (D. Md. 2006)). Nevertheless, institutions of higher education cannot discriminate against students in grading or

in the administration of classroom policies on the basis of classifications that are forbidden under federal anti-discrimination law.  But, plaintiff has presented no evidence that defendants did so.

In sum, plaintiff's discrimination claims cannot survive summary judgment because he has failed to address the University's non-discriminatory reason for his grade. *See also Mwabira-Simera v. Howard Univ.*, 692 F. Supp. 2d 65, 72 (D.D.C. 2010) (granting summary judgment against Mr. Mwabira-Simera as to his similar claims of discriminatory grading at Howard University, for the same reason).

## C.  Disability Discrimination Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  As with plaintiff's Title VI claim, defendants do not dispute that the University is subject to both Title II of the ADA and § 504 of the Rehabilitation Act.

In general, a plaintiff seeking recovery for violation of either statute[10] must demonstrate

---

[10] Although "the ADA and Rehabilitation Act generally are construed to impose the same requirements," the Fourth Circuit has noted that "'the causation standards under Title II of the ADA and § 504 of the Rehabilitation Act are significantly dissimilar.'" *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 n.17 (4th Cir. 2005) (quoting *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 469 (4th Cir. 1999)). Thus, "[a] plaintiff seeking relief under Title II of the ADA must prove that disability 'played a motivating role' in the adverse action, while a plaintiff seeking relief under § 504 of the Rehabilitation Act must prove that the defendants'

that (1) he has a disability, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

I assume, for the sake of argument, that plaintiff has proffered sufficient evidence to show that he (1) has a disability, and (2) is otherwise qualified to be a student at Morgan State. He has advanced no evidence to suggest discrimination on the basis of disability.

Under the disability discrimination statutes a plaintiff must show that he was excluded from participation in, or denied the benefits of, a program or service offered by a public entity, or subjected to discrimination by that entity. *Constantine*, 411 F.3d at 499 (citing 42 U.S.C. § 12132; 29 U.S.C. § 794(a)). Plaintiff has not shown, and the record does not indicate, that he was denied any benefits at Morgan State because of his disability. Quite the opposite: in his deposition, plaintiff stated clearly that the University accommodated his disability with note-takers, a tape recorder, and extended time on examinations. Mwabira-Simera Dep. at 18. The record also indicates that plaintiff was given "double time" to complete the mid-term exam in Geography 309. *See* Ex. B to Motion; *cf. Constantine*, 411 F.3d at 499 (discrimination recognized where university failed to accommodate student's disability by giving her additional time on her exams). Nor has plaintiff shown, by way of affidavit or other admissible evidence, that defendants otherwise discriminated against him on the basis of his disability.

---

discriminatory conduct was 'solely by reason' of the plaintiff's disability." *Id*; *see also Paulone v. City of Frederick,* 787 F. Supp. 2d 360, 370 (D. Md. 2011). However, analysis of plaintiff's claims does not turn on the issue of causation. Therefore, plaintiff's ADA and Rehabilitation Act claims may be considered together.

Unlike plaintiff's assertions of racial discrimination, he has not even alleged overt derogatory statements against him on the basis of disability.  Nor has he alleged facts that indicate differential treatment as between him and other similarly situated non-disabled students. Plaintiff's bare statement, unsupported by affidavit or other admissible evidence, that he was denied "consultation/advising and tutorship from October 2008 to March 2009," Opposition at 7, does not establish discrimination on the basis of disability and cannot withstand a motion for summary judgment.

### Conclusion

For the foregoing reasons, summary judgment is granted in favor of defendants by the Order that accompanies this Memorandum Opinion.[11]

Date:   March 26, 2013                          _____/s/_____

Ellen Lipton Hollander
United States District Judge

---

[11]   In light of my determination that plaintiff has failed to generate any triable issue of unlawful discrimination, I need not address defendants' additional argument that the individual defendants are not subject to suit under Title VII, Title II of the ADA, or § 504 of the Rehabilitation Act.